No. 13-3032; consolidated with 13-3036
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

United States of America,

*Plaintiff-Appellee*,

**v.**

Luis Alberto Munoz Miranda, et al.,

*Defendants-Appellants*.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

OPENING BRIEF OF APPELLANTS LUIS ALBERTO MUNOZ
MIRANDA AND FRANCISCO JOSE VALDERRAMA CARVAJAL

<table>
<tr><td>Douglas J. Behr (Bar No. 163998)<br>Keller and Heckman LLP<br>1001 G Street, N.W., Suite 500 West<br>Washington, D.C. 20001<br>Tel: (202) 434-4100<br>Fax: (202) 434-4646</td><td>Elita C. Amato (Bar No. 442797)<br>Law Office of Elita C. Amato<br>1600 Wilson Blvd., Suite 205<br>Arlington, VA 22209<br>Tel:  (703) 522-5900<br>Fax: (703) 875-8957</td></tr>
<tr><td>*Counsel for Luis Alberto Munoz<br>Miranda (Appointed by the Court)*</td><td>*Counsel for Francisco Jose Valderrama<br>Carvajal (Appointed by the Court)*</td></tr>
</table>

February 24, 2014

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and *Amici*.

The parties before the District Court in this case were the United States of America; Appellants, Luis Alberto Munoz Miranda ("Munoz") and Francisco Jose Valderrama Carvajal ("Valderrama"), and co-defendant Jorge Alberto Garcia Jaramillo. The United States and Messieurs Munoz and Valderrama are before this Court. There are no intervenors or *amici curiae*.

### B. Ruling Under Review.

The rulings under review are the Order (Dkt. 101) denying Defendants' Joint Motion for Reconsideration of Defendants' Motions to Dismiss (Dkt. 86) and Defendants Motion for Reconsideration of the Court's Denial of the Defendant's Motion to Dismiss Indicment for Lack of Subject Matter Jurisdiction (Dkt. 87) as set out in the District Court's Opinion (Dkt. 100)("Opinion") and the acceptance of the defendants' pleas of guilty on October 12, 2012.

Both Mr. Munoz and Mr. Valderrama were sentenced to serve sixty months incarceration plus thirty-six months of supervised release. Judgment of the District Court ("Judgment"), April 8, 2013, Appendix for Appellants Luis Alberto Munoz Miranda and Francisco Jose Valderrama Carvajal (("App.") 1-12).

i

**C. Related Cases**

The appeals of co-defendants Valderrama and Munoz have been consolidated.  The case against co-defendant Jorge Alberto Garcia Jaramillo was dismissed on April 24, 2013.  Co-defendants before the District Court, Jorge Castro Sanchez, and Francisco Vergara Neri are still at large.  There are no other related cases before this Court or any other court.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

TABLE OF CONTENTS...........................................................................iii

TABLE OF AUTHORITIES ....................................................................v

STATEMENT OF JURISICTION ...........................................................1

STATEMENT OF THE ISSUES ON APPEAL .......................................1

STATEMENT OF THE CASE.................................................................3

STATEMENT OF THE FACTS ..............................................................5

SUMMARY OF ARGUMENT ..............................................................14

ARGUMENT .........................................................................................17

I.     STATUTE IS UNCONSTITUTIONAL .......................................17

       A.    Defendant's Conduct Does Not Violate the
             Law of Nations ....................................................................17

             1.    Conspiracy to Transport Drugs on the High Seas is Not
                   Against the Law of Nations  ...................................21

             2.    Conspiracy to Transport Drugs Is Not An Offense Under the
                   UN Treaty Against Illicit Traffic In Drugs.............................22

       B.    Passing Through International Waters Does Not Confer
             Jurisdiction ........................................................................23

II.    THERE WAS NO JURISDICTION OVER THESE DEFENDANTS OR, IN
       THE ALTERNATIVE, NO FACTUAL BASIS FOR THE DEFENDANTS'
       PLEAS BECAUSE, EVEN IF THE STATUTE IS CONSTITUTIONAL,
       ITS EXTRATERRITORIAL APPLICATION DOES NOT STRETCH THIS
       FAR................................................................................................26

A.    The Prosecution Violated These Defendants' Due Process
Rights.................................................................................................35

B.    The District Court Did Not Have Subject Matter Jurisdiction Because
Mr. Munoz and Mr. Valderrama Were Not Associated With a Vessel
Subject to the Jurisdiction of the United States .................................41

    1.    Mr. Munoz ...............................................................................41

    2.    Mr. Valderrama ........................................................................43

CONCLUSION ..................................................................................................44

CERTIFICATE OF COMPLIANCE ....................................................................45

CERTIFICATE OF SERVICE ............................................................................47

# TABLE OF AUTHORITIES[1]

## CASES

*American Banana Co. v. United Fruit Co., 213 U.S. 347 (1909)* .........................18

*George E. Warren Corp. v. EPA,* 159 F.3d 616 (D.C. Cir. 1998) .........................31

*In re Air Crash Off Long Island, New York*, 209 F.3d 200, 202-03 (2d Cir. 2000)................................................................................................18

*Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013)..............................28

*Luan v. United States*, 722 F.3d 388 (D.C. Cir. 2013) .........................................16

*Molvan v. Attorney General for Palestine*, (1948) 81 LI L Rep. 277, UKPC .......................................................................................47

*Murray v. Schooner Charming Betsy*, 6 U.S. (2 ranch 64) (1804).........................40

*Old Dominion Steamship Co. v. Gilmore*, 207 U.S. 398, 403 (1907) ....................18

*South African Airways v. Dole,* 817 F.2d 119 (D.C. Cir. 1987)............................31

*Shuler v. United States,* 531 F.3d 930 (D.C. Cir. 2008)........................................26

*United States v. Aikins*, 946 F.2d 608 (9th Cir. 1990)...........................................25

*\*United States v. Ali*, 718 F.3d 929 (D.C. Cir. 2013).... 21, 25, 28-30, 37-39, 44-45
*United States v. Alvarez-Mena*, 765 F.2d 1259 (5th Cir. 1985) .............................47

*\*United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012)........................................................................ 4, 11, 17-19, 22-23

*United States v. Caicedo*, 47 F.3d 370 (9th Cir. 1995)................... 14, 37, 38-39, 41

*United States v. Cardales*, 168 F.3d 548 (1st Cir. 1999)......................................25

---

[1] Authorities upon which we chiefly rely are marked with an asterisk.

*United States v. Cardales-Luna*, 632 F.3d 731, (1st Cir. 2011) ............18, 21-22, 25

*United States v. Davis*, 905 F.2d 245 (9th Cir. 1990)....................................... 34, 36

*United States v. Dire*, 680 F.3d 446 (4th Cir. 2012).................................................21

*United States v. De La Garza*, 516 F.3d 1266 (11th Cir. 2008) ............20, 24, 30, 41

*United States v. Greer*, 965 F. Supp. 531 (D. Ver. 1997)........................................39

*United States v. Hasan*, 747 F.Supp. 2d 599 (E.D. Va. 2010) ...................................................................................................................21

*United States v. Khan*, 35 F.3d 426 (9th Cir. 1994) .................................................34

*United States v. Luchi*, 627 F.3d 1 (1st Cir. 2010) ........................................... 37, 42

*United States v. MacAllister*, 160 F.3d 1304 (11th Cir.1998) .................................30

*United States v. Marino-Garcia*, 679 F.2d 1373 (11th Cir. 1982) ............. 27, 38, 41

*United States v. Martinez-Hidalgo*, 993 F.2d 1052 (3d Cir. 1993) ................................................................................................ 38-40

*United States v. Matos-Luchi*, 627 F.3d 1 (4th Cir. 2010)............................... 37, 42

*United States v. Medjuck*, 937 F. Supp. 1368 (N.D. Cal. 1996)...................... 33- 36

*United States v. Mena*, 863 F.2d 1522 (11th Cir. 1989)................................. 25, 38

*United States v. Mohammad-Omar,* 323 F. App'x. 259 (4th Cir.2009) .......... 35-36

*United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2006).......................................24

*United States v. Rendon*, 354 F.3d 1320 (11th Cir. 2003)............................... 25, 44

*United States v. Rubies*, 612 F.2d 397 (9th Cir. 1979) ...........................................37

*United States v. Salcedo-Ibarra*, No. 8:07-CR-49-T-27TGW, 2009 WL 1953399 (M.D. Fla July 6, 2009).......................................................................19-20, 25, 30

*United States v. Shi*, 525 F.3d 709 (9th Cir. 2008)..................................................37

*United States v. Shibin*, 722 F.3d 233 (4th Cir. 2013).............................................30

*United States v. Suerte*, 291 F.3d 366 (5th Cir. 2002)............................................40

*United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002)...........................17, 20, 24

*United States v. Vilches-Navarrete*, 523 F.3d 1 (1st Cir. 2008) ...........................25

*United States v. Yakou*, 428 F.3d 241 (D.C. Cir. 2005)................................... 28-29

*United States v. Yousef*, 327 F.3d 56 (2d Cir.2003) ......................................... 11, 35

*United States v. Yunis,* 924 F.2d 1086 (D.C. Cir. 1991)........................................31

*United States v. Zakharova*, 468 F.3d 1171 (9th Cir. 2006)..................................25

*W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectronics Corp., Int'l,*
493 U.S. 400 (1990)..................................................................................................18

*Comm. of  United States Citizens Living in Nicaragua*
*v. Reagan*, 859 F.2d 929 (D.C. Cir. 1988)............................................................19
*Fed. Trade Comm'n v. Compagnie de Saint-Gobain-Pont-a-Mousson,*
636 F.2d 1300 (D.C. Cir. 1980)..............................................................................31

## CONSTITUTIONS

U.S. Constitution, art I, § 8, cl. 10  ................................................................ 17-18

## STATUTES AND REGULATIONS

18 U.S.C. §§ 2, 1651, 3231.......................................................................... 1, 3, 29

21 U.S.C. § 881(a) ...................................................................................... 3, 16

28 U.S.C. § 1291 ................................................................................................ 1

46 U.S.C. App'x § 1903 ........................................................................ 41

46 U.S.C. § 70501 *et seq* ......................................................... 1-4, 41-43


**RULES**

Federal Rule of Criminal Procedure 11(c)(1)(C) .................................. 6, 8


**TREATISES**

United Nations Convention on the Law of the Sea, 1833 U.N.T.S. 3; 21 ILM 1261 (1982) ..................................................................... 21, 25, 27, 37-38, 43

United Nations. Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, 1582 U.N.T.S. 95 28 I.L.M. 493 (1988) ...................... 22


**SECONDARY SOURCES**

Eugene Kontorovich, *Beyond the Article I Horizon: Congress's Enumerated Powers and Universal Jurisdiction over Drug Crimes*, 93 Minn. L. Rev. 1191 (2009) .............................................................................................. 22

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this case pursuant to 18 U.S.C. §

3231 and the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501 et seq.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  This appeal is from a

final judgment of the United States District Court for the District of Columbia,

which disposed of all issues in the case.  *See* Judgment (App., 1-12).   Mr. Munoz

timely filed a notice of appeal from the final judgment of the District Court.

Munoz Notice of Appeal, April 9, 2013 (App., 160).  Mr. Valderrama also timely

filed a notice of appeal from the final judgment of the District Court.  Valderrama

Notice of Appeal, April 15, 2013 (App., 161).

## STATEMENT OF THE ISSUES ON APPEAL

1.      Did the District Court err in denying defendants' Motion for

Reconsideration because the prosecution of these defendants was illegal?

2.      Was the prosecution of these defendants unconstitutional because Congress

may not exert the jurisdiction of the United States over foreign individuals who

commit crimes under foreign domestic law in foreign countries when the

individual has not violated international law or otherwise removed themselves

from the protection of domestic law?

3.      Was the prosecution of these defendants unconstitutional because Congress

did not extend the jurisdiction of the Maritime Drug Law Enforcement Act, 46

1

U.S.C. §§ 70501 *et seq*., to offenses committed by non-U.S. citizens in the domestic jurisdiction of a foreign country that have no nexus to the United States?

4.    Did the prosecution of these defendants violate their due process rights because it was fundamentally unfair to prosecute two citizens and residents of Colombia for conspiracy to possess with intent to distribute cocaine on a vessel subject to the jurisdiction of the United States when all the activities alleged to have been committed by these defendants occurred in Colombia, these defendants were never on a vessel subject to the jurisdiction of the United States, there was no nexus between the activities of these defendants, and the United States and these defendants did not violate international law?

5.    Did the Court have subject matter jurisdiction over these defendants when neither was associated with a vessel subject to the jurisdiction of the United States?

6.    Was there a factual basis for the defendants' pleas of guilty to conspiracy to possess with intent to distribute cocaine on a vessel subject to the jurisdiction of the United States when the drugs with which Mr. Munoz were associated were never loaded onto a boat that in turn never left the dock and the boat with which Mr. Valderrama was associated was in Colombian domestic waters at the time it was interdicted by the Colombian authorities?

## STATEMENT OF THE CASE

On April 23, 2010, Luis Alberto Munoz Miranda ("Munoz") and Francisco Jose Valderrama Carvajal ("Valderrama") along with Jorge Castro Sanchez, Francisco Vergara Neri, and Jorge Alberto Garcia Jaramillo were indicated by a grand jury. Count One of the indictment charged all defendants with Conspiracy to Distribute Five Kilograms or More of Cocaine on Board a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. §§ 70503 & 70506(b) and 18 U.S.C. § 2. Count Two charged only Jorge Alberto Garcia Jaramillo with Possession with Intent to Distribute Five Kilograms or More of Cocaine on Board a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. § 70503 and aiding and abetting in violation of 18 U.S.C. § 2. The indictment also included forfeiture allegations under 46 U.S.C. § 70507 and 21 U.S.C. § 881(a). Indictment (App., 13-16). On August 25, 2010, a superseding indictment was returned against the same defendants. The only significant difference in the superseding indictment was the absence of Count Two of the original indictment. Superseding Indictment ( App., 17-19).

Mr. Munoz, a citizen of Colombia, was arrested in that country by the Colombian National Police on May 12, 2011. February 20, 2013 Opinion (Dkt. No. 100) ("Opinion"), p. 2 ( App., 20-90). Mr. Munoz was extradited to the United States. Mr. Munoz, along with then co-defendant Mr. Jaramillo, appeared

before a Magistrate Judge for arraignment on February 27, 2012. *Id*.   Mr.

Valderrama was arrested in Colombian on May 12, 2011.  He was extradited to the

United States and appeared before a Magistrate Judge on April 20, 2012.  Opinion,

p. 2 (App., 22).

On October 11, 2012, the District Court heard argument on defendants'

motion challenging, among other things, the constitutionality and applicability of

the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501 et seq. ("MDLEA").

At the close of the hearing, the Court orally denied all relevant motions. *See*

Minute Order, Docket Sheet (Doc. No. 1431086), p. 11.

On October 12, 2012, the government filed a Superseding Information

against Messieurs. Munoz and Valderrama alleging one count of conspiracy to

distribute 500 grams or more of cocaine on board a vessel subject to the

jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1) &

70506(b).  Superseding Information (App., 91-92).  On that same date, each

defendant entered a plea of guilty to the Superseding Information.

Prior to sentencing, on November 6, 2012, the United States Court of

Appeals for the Eleventh Circuit held that the MDLEA was unconstitutional as

applied in a case where the defendants never left thenational waters of Panama.

*See United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012).  The

defendants then filed a Motion for Reconsideration based primarily on the

4

Eleventh Circuit's opinion.  The District Court denied the motion in a written

opinion on February 20, 2013.  Opinion (App., 20-90).

On April 8, 2013, both Mr. Munoz and Mr. Valderrama were sentenced to

sixty months incarceration, with credit for time served, followed by thirty-six

months of supervised release.  Mr. Munoz timely noted his appeal on April 10,

2013, and Mr. Valderrama noted his appeal on April 15, 2013.

## STATEMENT OF FACTS

### A. Mr. Munoz

As set forth in the Joint Statement of Stipulated Facts, and accepted by the

Court, the following facts were agreed to by Mr. Munoz and the government and

formed the basis of his plea:

> Mr. Munoz Miranda was "a co-conspirator in a drug
> trafficking organization which, from in or about 2006 and
> continuing until August 25, 2010, transported narcotics
> from Colombia on stateless go-fast vessels through
> international waters to other countries.  In particular, in
> November 2006, the defendant [Mr. Munoz Miranda],
> his co-defendant Valderrama Carvajal, and others in
> Colombia and Mexico planned to transport more than
> 500 grams of cocaine on board a go-fast boat leaving
> from the north coast of Colombia.  The cocaine was to be
> ultimately delivered to a co-defendant in Mexico.  The
> go-fast boat was standing by with a crew and was ready
> to transport the cocaine.  The go-fast boat was not
> registered in Colombia and did not fly a Colombian flag.
> However, the day before the cocaine was to be loaded on
> the go-fast boat, the cocaine was stolen from the custody
> of others who had been entrusted with the cocaine by the

5

> defendant.  Thereafter, the defendant and others
> attempted to get the cocaine back, but were unsuccessful.
>
>  The defendant agrees venue and jurisdiction lie with this
> Court.

Munoz Joint Statement of Stipulated Facts  (App., 93-94).

Mr. Munoz's plea was pursuant to a Plea Agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) and included a stipulated sentence of five years. Munoz Plea Agreement (App. 118-27).  As part of the Plea Agreement, Mr. Munoz admitted his agreement with the Plea Agreement and to the Joint Statement of Stipulated Facts as it related to him.  Oct. 12, 2012 Transcript of Plea, pp. 7-8 (App., 147-48).  Mr. Munoz further agreed to waive "any right to appeal any claim that the Defendant and his crimes were not subject to the jurisdiction of the United States."  Munoz Plea Agreement ¶ 19 (App., 124).

## B.  Mr. Valderrama

Mr. Valderrama likewise agreed with the government to the following Joint Statement of Stipulated Facts which was accepted by the Court and formed the basis of his plea:

> Mr. Valderrama was "a co-conspirator in a drug
> trafficking organization which, from in or about 2006 and
> continuing until August 25, 2010, transported narcotics
> from Colombia on stateless go-fast vessels through
> international waters to other countries.  In particular, in
> November 2006, the defendant and others planned to
> transport more than 500 grams of cocaine from Colombia
> to a point near Honduras.  The cocaine was loaded on

6

board a go-fast boat which departed the north coast of Colombia on or about November 16, 2006. On or about November 18, 2006, this go-fast boat was intercepted by the Colombian Navy near Roncador Island, Colombia, and more than 500 grams of cocaine was recovered by the Navy. . . . The go-fast boat did not fly a flag, was not registered in Colombia or any other nation, and contained no registration identification. The crew of five was also arrested. No one in the crew, including the captain, claimed that the go-fast boat was registered in Colombia. The captain of the go-fast boat admitted that he knew the boat was transporting cocaine and that the cocaine was to be offloaded onto another vessel near the coast of Honduras.

Colombian law enforcement authorities were intercepting the defendant's telephone. These intercepted calls, some before the seizure and some after the seizure, and the testimony of a co-defendant, showed that the defendant was involved in planning the load seized near Roncador Island.

Also in November 2006, the defendant Valderrama Carvajal and others planned to transport a second load of cocaine from the north coast of Colombia. This second load was also to be transported on board a go-fast boat, which had a crew and was ready to go. On the day before the cocaine was to be loaded on the go-fast boat, the cocaine was stolen and the defendant and his associates were not able to transport the cocaine from the coast.

Intercepted telephone calls and the testimony of two co-conspirators linked the defendant to the stolen drugs.

The defendant agrees venue and jurisdiction lie with this Court.

Valderrama Joint Statement of Stipulated Facts (App., 128-30).

7

Mr. Valderrama's plea was pursuant to a Plea Agreement under Federal

Rule of Criminal Procedure 11(c)(1)(C) and included a stipulated sentence of five

years.  Valderrama Plea Agreement (App., 131-40)  As part of the Plea Agreement,

Mr. Valderrama admitted his agreement with the Plea Agreement and to the Joint

Statement of Stipulated Facts as it related to him.  Oct. 12, 2012 Transcript, pp. 3-6

(App., 143-46).   Mr. Valderrama further agreed to waive "any right to appeal any

claim that the Defendant and his crimes were not subject to the jurisdiction of the

United States."  *Id*.; *see also* Valderrama Plea Agreement ¶ 19 (App., 137).

## THE DISTRICT COURT'S OPINION

At the argument on the defendants' motion for reconsideration, the Court

observed that "although the defendants waived their rights to appeal, one can never

waive jurisdiction."  Nov. 29, 2012 Transcript, p. 4 (App., 99).   The court further

observed that it was time to write an opinion on the jurisdictional issues "and get it

appealed.  And we need to figure out a way to get that done  . . . ." Nov. 29, 2012

Transcript, p. 9 (App., 104).

The District Court recognized that this case represents "a factually

unprecedented scenario" that "may be at the outskirts of Congress's power to

criminalize extraterritorial conduct."  Opinion, pp. 2 ,1 (App., 22, 21).

In denying the motion for reconsideration, the Court relied on the allegation

that the conspiracy of which the defendants were a part was involved with one

shipment of cocaine and one attempted shipment.  First, on November 16, 2009, a shipment of cocaine on a go-fast board was recovered by the Colombian navy in the waters around Roncador Island which are claimed by Colombia.  Second, a shipment of cocaine that was planned to be shipped from the northern coast of Colombia on a go-fast board was stolen before reaching the boat.   The Court further noted that "[t]he facts regarding the November 16, 2009 shipment do not appear in Mr. Munoz's Joint Statement of Stipulated Facts, but DOJ's theory of the case has been that both defendants were complicit in planning and arranging both shipments."  Opinion, p. 6 n.5 (App., 26).  The District Court ignored this factual distinction between the defendants because "Mr. Munoz Miranda has not argued that this asymmetry in the factual proffers is in any way relevant to the motions before the Court."  *Id.*[2]  Thus, the District Court relied on the November 16, 2009 shipment as foundational to its decision without consideration of the effect, if any, of the more limited nature of Mr. Munoz's admissions.

The Court made two factual findings in support of its decision:  "(1) the vessel seized by the Colombian Navy off Roncador and the vessel planned to transport the stolen load were 'stateless vessels' subject to United States

---

[2] The Court also noted "facts" not cited in either of the Joint Statements of Stipulated Facts.  For instance, the Court noted that according to an affidavit filed by a DEA Agent, "Defendant Munoz Miranda 'assisted with logistics, as well as with obtaining and delivering maritime supplies and reports to ensure that the cocaine arrived at its planned destination without law enforcement detection."  Opinion, p. 5 (App., 25).

jurisdiction under 46 U.S.C. § 70502(c)(1),(d); and (2) the vessel seized by the

Colombian Navy traveled on the high seas before being seized off Roncador in the

territorial waters of Colombia."  Opinion, p. 19 (App., 39).

First the Court found that Mr. Munoz was involved with a stateless vessel.

In support of that finding, the District Court noted that Mr. Munoz "conceded that

the stolen load was to be shipped aboard a boat that 'was not registered in

Colombia and did not fly a Colombia flag."  Opinion, p. 22 (App., 42).  The Court

rejected the claim that the vessel had to be in international waters in order to be

stateless without directly addressing the situation of the boat associated with Mr.

Munoz.  Rather, the Court cited the fact that the boat involved with co-defendant

Valderrama traveled in international waters.  The Court further relied on the

absence of any authority for the proposition that the vessel must be in international

waters to be stateless.  On the other hand, the court did not cite any authority that a

docked vessel, let alone a vessel within domestic waters, has been found to be

"stateless."  *See* Opinion, pp. 23-24 (App., 43-44).

The Court held that "as a matter of statutory construction, MDLEA prohibits

the conduct charged here because the Defendants conspired with the crew to

distribute a controlled substance on board a stateless vessel."  Opinion, p. 27

(App., 47).  In so concluding, the Court found that Congress intended the statute to

apply extraterritorially and thus criminalized "'attempting or conspiring' to

10

'knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board.'" Opinion, p. 28 (App., 48).

The Court further concluded that it was "bound to apply MDLEA as written regardless of whether application of MDLEA in this case is consistent with international law." Opinion, p. 30 (App., 50). However, the Court observed that "DOJ has not demonstrated any clear authority under international law for the proposition that a country may exercise jurisdiction over conspirators whose conduct took place wholly in a foreign country, with no demonstrated nexus to the country exercising jurisdiction, on the theory that the conspiracy involved use of a stateless vessel that traveled on the high seas." Opinion, p. 30-31(App., 50-51).

The Court noted that the government relied on two theories of jurisdiction to support its exercise of authority over the defendants : universal and protective. The Court found that "[n]o source of customary international law has designated drug trafficking as being subject to universal jurisdiction." Opinion, p. 32 (App., 52) (citing *Bellaizac-Hurtado*, 700 F.3d at1260-61 (Barkett, J., concurring). However, the Court refused to determine whether the protective principle applied "because there is no ambiguity in MDLEA, and the Court must enforce the statute as written by Congress unless there are other constitutional infirmities." Opinion, p. 33 (App., 53); *see also United States v. Yousef*, 327 F.3d 56, 93 (2d Cir.2003).

11

The Court rejected arguments that MDLEA required a nexus to the United States and that the consent of the Colombian government was required.  The Court found that "there is no territorial qualification on the United States' jurisdiction over a 'vessel without nationality'" and the plain and unambiguous meaning of the statute is that the United States has jurisdiction over a stateless vessel "whether it is located within or without a foreign nations territorial waters."  Opinion,  p. 42 (App., 62).  Alternatively, the court found that Colombia consented to jurisdiction over the boat seized near Roncador Island when it extradited Messieurs Munoz and Valderrama.  *Id.*

In addressing the constitutionality of the MDLEA as applied in this case, the Court found that Congress had the authority to criminalize the conduct charged through the Felonies on the High Seas Clause of the Constitution.  Opinion, p. 44 (App., 64).[3]  The Court found that "[a]t a bare minimum, the conduct in this case came within the scope of the Felonies on the High Seas Clause when the stateless vessel employed by the conspiring members of the DTO [drug trafficking organization], carrying cocaine, left the northern coast of Colombia and entered the high seas."  Opinion, p. 59 (App., 79).  The Court took no position about whether the Clause would apply if the vessel never left Colombian territorial waters.  (The

---

[3]  The government did not rely on the Treaty Power to assert jurisdiction over Mr. Munoz. Opinion, p. 46.

situation with the boat referenced in Mr. Munoz's Plea). Opinion, p.59 n.17

(App., 79). The District Court further found that Congress had the authority to

outlaw a criminal conspiracy to commit drug trafficking on the high seas. Opinion,

p. 62 (App., 82). According to the Court,

> Defendants' co-conspirators committed a substantive
> offense, possession of narcotics on board a stateless
> vessel on the high seas, which indisputably would be
> both within this Court's jurisdiction and the ambit of the
> Felonies on the High Seas Clause. Defendants have not
> argued that this offense was not a foreseeable consequent
> of the conspiracy; to the contrary, moving cocaine from
> Colombia to a rendezvous point off Honduras through a
> stateless vessel on the high seas was an integral part of
> the charged conspiracy. Messrs. Munoz Miranda and
> Valderrama Carvajal are chargeable with the conduct of
> their co-conspirators aboard the stateless vessel, and the
> Court concludes that their conduct in Colombia is within
> Congress's authority to define as a felony on the high
> seas.

Opinion, p. 63 (App., 83).

Finally, the District Court found that the prosecution of these defendants did

not violate due process. Opinion, p. 69 (App., 89). The Court concluded that "this

prosecution is neither arbitrary nor fundamentally unfair" because "[a]lthough the

Defendants were not aboard the stateless vessel when it was seized, their use of it

represents an 'attempt to avoid the law of all nations,' and they have 'forfeited

[the] protections of international law and can be charged with the knowledge that

13

[they] ha[ve] done so.'" *Id.* (quoting *United States v. Caicedo*, 47 F.3d 370, 372-73 (9th Cir. 1995)).

## SUMMARY OF ARGUMENT

This case presents the question of whether Congress can criminalize the foreign land-based activities of a foreign drug distribution ring involved with transporting drugs by unflagged vessels without any nexus to the United States.

Messieurs Valderrama and Munoz, citizens of the Republic of Colombia, were convicted of activities they undertook solely within Colombia that were violations of domestic Colombian law, and which had no nexus with the United States. Each admitted to being involved in a conspiracy to ship cocaine from Colombia to the Republic of Mexico using vessels that were not registered in Colombia. Mr. Valderrama admitted that he had been involved in a shipment that was intercepted in Colombian waters while Mr. Munoz admitted that he planned a shipment that was stolen before it could be loaded onto a boat. Based on these facts the District Court accepted pleas of guilty to a violation of the conspiracy provision of the MDLEA, 46 U.S.C. § 70503(a)(1) & 70506(b). However, the acts committed by these defendants were outside the reach of American law and thus, the District Court was without jurisdiction over them. Furthermore, there was not a factual basis for the pleas.

14

Congress is authorized under the Constitution to regulate piracy and felonies on the high seas. The MDLEA is based on that authority. However, neither Mr. Munoz nor Mr. Valderrama were ever on the high seas and thus their prosecution was unconstitutional. The government asserted that it had jurisdiction over these defendants because the alleged conspiracy involved "vessels without nationality." But neither of the vessels in question were "without nationality" because the vessel must be in international waters to fit that definition. Furthermore, Mr. Munoz only stipulated that the boat he intended to use was not registered in Colombia nor did they fly the Colombian flag; facts that do not establish that the ships were "without nationality" as defined by the MDLEA. But even if the vessels are considered to be without nationality, the Eleventh Circuit Court of Appeals recognized in *Bellaizac-Hurtado*, that such vessels are not subject to the jurisdiction of the United States when in the domestic waters of another country. In this case, the boat associated with Mr. Munoz never left the dock while the boat associated with Mr. Valderrama was apprehended in the domestic waters of Colombia.

The government is claiming that once an unregistered vessel travels through international waters, it becomes an outlaw vessel and everyone associated with it is subject to the jurisdiction of the United States. But an unregistered vessel is not an outlaw ship and the United States cannot assume jurisdiction of every such boat. Rather, an unregistered vessel becomes "without nationality" when on the high

15

seas resulting in its lack of the legal protection of any nation and being subject to being intercepted and subjected to the jurisdiction of the United States, which did not occur here.

The lack of jurisdiction is reinforced because conspiracy is the only charge here.  But as this Court has stated, conspiracy is not a crime recognized by international law.  *See United States v. Ali*, 718 F.3d 929 (D.C. Cir. 2013). Additionally, conspiracy to smuggle drugs does not violate the law of nations. Therefore, Congress cannot constitutionally regulate it except when it occurs on the high seas or has a nexus to the United States.  Furthermore, a narcotics conspiracy is an inchoate crime that has been held not to require an overt act.[4] Thus, under the government's position, two foreigners who sat in a coffee shop in a foreign country and agreed to ship cocaine through international waters on an unregistered vessel to another foreign country are subject to being prosecuted in the United States without any showing of a nexus to the United States.  Congress, in passing the MDLEA did not demonstrate that it intended such an intrusion on the domestic laws of other countries.  Such an exercise of American law is without constitutional foundation.

_____

[4] In *United States v. Shabani,* 513 U.S. 10, 13 (1994), the Supreme Court held that the language of 21 U.S.C. § 846, which is identical to the language found in § 70506(b), does not "require[] that an overt act be committed to further the conspiracy" and it has "not inferred such a requirement from congressional silence in other conspiracy statutes."  The indictment against these defendants did not include an overt act.

## STANDARD OF REVIEW

This Court reviews a determination relating to subject matter jurisdiction *de novo*. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008); *see also United States v. Tinoco,* 304 F.3d 1088, 1114 (11th Cir. 2002)("We review *de novo* a district court's 'interpretation and application of statutory provisions' that go to whether the court has subject matter jurisdiction."). The review of statutory construction also is *de novo*. *Luan v. United States*, 722 F.3d 388 (D.C. Cir. 2013).

## ARGUMENT

### I.     STATUTE IS UNCONSTITUIONAL

#### A. Defendant's Conduct Does Not Violate the Law of Nations

As this Court noted, "[i]n most cases, the criminal law of the United States does not reach crimes committed by foreign nationals in foreign locations against foreign interests." *Ali*, 718 F.3d at 935. Any Congressional authority to criminalize the activity at issue here lies in Article I, § 8, cl. 10 of the Constitution which grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." The clause authorizes Congress to regulate only conduct that is "universally recognized" under international law. *Bellaizac-Hurtado*, 700 F.3d at 1259. Because neither drug trafficking nor conspiracy to commit drug trafficking is recognized as an offense under international law, Congress cannot criminalize a

17

domestic foreign conspiracy to traffic drugs with no nexus to the United States. *See id.; see also United States v. Cardales-Luna*, 632 F.3d 731, 739-751 (1st Cir. 2011)(Torruella, dissenting). At best, such a conspiracy is properly subject to Congressional oversight only when it occurs entirely on the high seas, outside the territory of a particular country[5] such as between crew members on a boat or between crew members of two boats.

In *Bellaizac-Hurtado*, the defendants were apprehended after fleeing a vessel "without a flag" that was carrying cocaine. The vessel was discovered and interdicted in Panamanian waters by the Panamanian navy. The defendants were apprehended by the Panamanians in the nearby Panamanian jungle. After an exchange of diplomatic notes, Panama agreed to the prosecution of the defendants in the United States. The Court of Appeals held that drug trafficking is not an offence against the law of nations and therefore, Congress exceeded its authority "when it proscribed the defendant's conduct in the territorial water of Panama." *Bellaizac-Hurtado*, 700 F.3d at 1258. The Court's holding was based on the constitutional limitation under Article 1, § 8, Cl. 10 to punish conduct that violates

---

[5] The "high seas" is an area where the law of no particular State has exclusive force, but all are equal. *The Scotland*, 105 U.S. 24, 29 (1881). By 1920, "the Supreme Court generally interpreted 'high seas' to mean international or non-sovereign waters." *In re Air Crash Off Long Island, New York*, 209 F.3d 200, 202-03 (2d Cir. 2000); *see also Old Dominion Steamship Co. v. Gilmore*, 207 U.S. 398, 403 (1907)("outside the territory, in a place belonging to no other sovereign"); *American Banana Co. v. United Fruit Co.*, 213 U.S. 347 (1909)(a region 'subject to no sovereign") *overruled on other grounds by W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectronics Corp., Int'l*, 493 U.S. 400 (1990).

the law of nations, which means customary international law.  *Id.* at 1245, 1251;

*see also Comm. of  United States Citizens Living in Nicaragua v. Reagan*, 859 F.2d

929, 942 (D.C. Cir. 1988)(recognizing slavery, torture, summary execution and

genocide as against international law).  The application of *Bellaizac-Hurtado* to

this case is strengthened by this Court's finding that conspiracy is not a crime that

violates the law of nations.  *See Ali*, 718 F.3d at 935; *cf.  Hamdan v. Rumsfeld*, 548

U.S. 557 (2006)(conspiracy is not recognized as violating the law of war).  Based

on *Bellaizac-Hurtado* and *Ali,* the actions of these defendants did not violate

international law and thus were beyond the constitutional reach of American law.

    The District Court only found one case, *United States v. Salcedo-Ibarra*, No.

8:07-CR-49-T-27TGW, 2009 WL 1953399, at *1 (M.D. Fla July 6, 2009), that

addressed the question of the constitutionality of the MDLEA when applied to an

individual who was not aboard a vessel on the high seas but rather conspired with

such individuals.  *See* Opinion, pp. 48-51 (App., 68-71).  The decision, however, is

of no assistance to the government.  First, as the District Court acknowledged, the

basis of the *Salcedo-Ibarra* decision has been rejected by its court of appeals.

Opinion, p. 50 (App., 70) (the reasoning in *Salcedo-Ibarra* "is questionable after

the Eleventh Circuit's opinion in *Ballaizac-Hurtado*").  The *Salcedo-Ibarra* court

asserted, without citation to any authority, that "[j]ust as trafficking in narcotics on

the high seas is considered an offense against the "Law of Nations,' including the

United States, likewise, conspiring to traffic in narcotics on the high seas

constitutes such an offense." *Salcedo-Ibarra*, 2009 WL 1953399, at *3. But that

assertion was rejected by the Eleventh Circuit in *Belliazac-Hurtado*. *See*

*Belliazac-Hurtado,* 700 F.2d at 1251-53. Second, according to the *Salcedo-Ibarra*

court, the jurisdictional reach of the conspiracy provision is the same as the

underlying offense citing *United States v. De La Garza*, 516 F.3d 1266, 1271-71

(11th Cir. 2008), which in turn cited *United States v. Tinoco*, 304 F.3d 1088, 1107

(11th Cir. 2002). *Salcedo-Ibarra*, 2009 WL 1953399, at *2. Neither of those cases

support the conclusion that the underlying offense or the conspiracy clause applies

to domestic activities in a foreign country. Neither case addressed the legitimate

scope of the conspiracy clause. In fact, the co-conspirators in both *De La Garza*

and *Tinoco* had been on board cocaine-bearing go-fast vessels interdicted on the

high seas. Although not noted by the *Salcedo-Ibarra* court, the first count of the

indictment against Mr. Salcedo-Ibarra alleged a conspiracy to illegally import

cocaine *into the United States* and thus there was an alleged nexus to the United

States underlying the case. *See United States v. Juan Edison Salcedo-Ibarra, et*

*al*., No. 8:07-CR-49-T-27TGW, Superseding Indictment (Docket No. 7), (App.,

162-167).

### 1.    Conspiracy to Transport Drugs on the High Seas is Not Against the Law of Nations

The United Nations Convention on the Law of the Seas ("UNCLOS"), 1833 U.N.T.S. 3; 21 ILM 1261 (1982), sets out the recognized international law relating to the high seas. *See United States v. Hasan*, 747 F.Supp. 2d 599, 633-34 (E.D. Va. 2010). Although the United States is not a signatory to UNCLOS, it has recognized its legal framework. *See Ali,* 718 F.3d at 936-37; *see also Hasan*, 747 F.Supp. 2d at 619 ("[T]he United States has accepted as customer international law the treaty provisions dealing with "traditional uses" of the sea").

UNCLOS only identifies piracy and the slave trade as within universal jurisdiction and therefore violative of the law of nations. *See* UNCLOS Article ("Art.") 99, 105; *see also, Ali*, 718 F.3d at 936-37; *United States v. Dire*, 680 F.3d 446, 469 (4th Cir. 2012); *United States v. Cardales-Luna*, 632 F.3d 731, 746 (1st Cir. 2011)(Torruella, J. dissenting); *Hasan*, 747 F.Supp. 2d at 620.[6]  In contrast, the Convention makes no mention of conspiracy to commit drug trafficking and does not demonstrate that drug trafficking is considered a crime against the law of

---

[6] Article 99 provides, "[e]very State shall take effective measures to prevent and punish the transport of slaves in ships authorized to fly its flag and to prevent the unlawful use of its flag for that purpose. Any slave taking refuge on board any ship, whatever its flag, shall *ipso facto* be free."

Article 105 provides, "[o]n the high seas, or in any other place outside the jurisdiction of any State, every State may seize a pirate ship . . ., or a ship . . . taken by piracy and under the control of pirates, and arrest the persons and seize the property on board. The courts of the State which carried out the seizure may decide upon the penalties to be imposed, and may also determine the action to be taken with regard to the ships, aircraft or property, subject to the rights of third parties acting in good faith."

Piracy is defined in Article 101.

nations.  *See* Art. 108; *Cardales-Luna*, 632 F.3d at 746; Eugene Kontorovich,

*Beyond the Article I Horizon: Congress's Enumerated Powers and Universal*

*Jurisdiction over Drug Crimes*, 93 Minn. L. Rev. 1191, 1217-37 (2009).  No

source of customary international law has designated drug trafficking as being

subject to universal jurisdiction.  *Bellaizac-Hurtado*, 700 F.3d at 1261.

## 2.    Conspiracy to Transport Drugs Is Not An Offense Under the UN Treaty Against Illicit Traffic In Drugs

The U.N. Convention Against Illicit Traffic in Narcotic Drugs and

Psychotropic Substances, 1582 U.N.T.S. 95, 28 I.L.M. 493 (1988),  to which the

United States is a signatory, does not identify the conspiracy charged here as a

violation of the law of nations.  Rather, to the extent addressed, the Convention

makes it clear that it is a violation of domestic law.

The convention instructs that each signatory shall make conspiracy to

commit, as well as facilitating and counselling the commission of transport of an

illegal drug a violation of *domestic* law.  Art. 3.  The Convention provides that a

signatory may establish extraterritorial jurisdiction generally when "the offense is

committed on board a vessel" or when, "committed outside its territory with a view

to the commission, within its territory, of an offense . . . ."  Art. 4 § 1(b)(iii); *see*

*also* Opinion, p. 47 n.15 (App., 67).[7]  The Convention does not provide for

extraterritorial jurisdiction when the offense is committed within a foreign country

without a nexus to the country seeking to exercise jurisdiction nor when a domestic

conspirator allegedly is involved with a vessel.  Additionally, the Convention

addresses "illicit traffic by sea" without any mention of conspiracies to conduct

such traffic.  *See* Art. 17.  Finally, there are no "judicial decisions recognizing

Congress's authority to punish drug trafficking that has no connection to the

United States as an 'Offence against the Laws of Nations.'"  *Bellaizac-Hurtado*,

700 F.3d at 1261.

### B. Passing Through International Waters Does Not Confer Jurisdiction

Any alleged link between the defendants and a vessel that crossed or

intended to enter international waters does not overcome the constitutional

infirmity in this case. "For a district court to have adjudicatory authority over a

charge that a defendant conspired to violate the substantive crime . . . [under the

---

[7] The Convention states that "each party may take such measures as may be necessary to
establish its jurisdiction over the offences it has established in accordance with article 3,
paragraph 1 when (iii) the offence is one of those established in accordance with article 3,
paragraph 1, subparagraph (c)(iv), and is committed outside its territory with a view to the
commission ,within its territory, of an offence established in accordance with article 3, paragraph
1." Article 3, paragraph(c) subparagraph (iv), the referenced subparagraph, states that "each
Party shall adopt such measures as may be necessary to establish as criminal offences under its
domestic law, when committed intentionally, (c) subject to its constitutional principles and the
basic concepts of its legal system (iv) [p]articipation in, association or conspiracy to commit,
attempts to commit and aiding, abetting, facilitating and counselling the commission of any of
the offences established in accordance with this article."

23

MDLEA], the Government must preliminarily show that the conspiracy's vessel was, when apprehended, 'subject to the jurisdiction of the United States.'" *De La Garza*, 516 F.3d at 1271-72 (quoting *Tinoco*, 304 F.3d at 1107). The instant conspiracies did not occur on the high seas and the vessel associated with Mr. Valderrama was not subject to the jurisdiction of the United States at the time it was apprehended; it was in the domestic waters of Colombia. Furthermore, Mr. Valderrama did not conspire on the high seas. As to Mr. Munoz, the boat with which he was associated never left the dock. Instead, all of Mr. Valderrama and Munoz's activities took place within Colombia and were subject to Colombian, not American, law.

The defendants are in a stronger position than alleged co-conspirators found on a flagged ship such as in *United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2006). *Perlaza* involved two boats apprehended in international waters in proximity of each other; one, an alleged stateless go-fast boat and a second, flagged in Colombia, which allegedly provided support to the go-fast boat. The Court of Appeals found that no nexus to the United States was required of anyone on the go-fast boat, if it were in fact stateless, but that a nexus with the United States had to exist in order to exert jurisdiction over the crew of the support vessel that was flagged in Colombia. The *Perlaza* court rejected the trial court's attempt to attribute the stateless status of the go-fast boat to the alleged co-conspirators on

24

the supply ship.  Similarly here, the defendants' activities occurred within the

sovereign country of Colombia subject to domestic Colombian law, which is at

least the equivalent of the Colombian flagged vessel on the high seas which

according to UNCLOS, is subject to Colombian law only.

The conspiracy provision of the MDLEA has generally been applied to crew

members aboard a drug carrying vessel so they are not controlling here.  *See, e.g.*,

*United States v. Zakharova*, 468 F.3d 1171 (9th Cir. 2006); *Cardales-Luna*, 632

F.3d 371 (1st Cir. 2011) (eight crew members on a Bolivian flagged boat in

international waters convicted of conspiracy and aiding and abetting); *United*

*States v. Vilches-Navarrete*, 523 F.3d 1 (1st Cir. 2008) (Case involving a

conspiracy conviction of defendant on board a vessel in international waters.

Evidence showed that the defendant spoke with the owner of the drugs and

instructed the ship's captain during the voyage); *United States v. Rendon*, 354 F.3d

1320 (11th Cir. 2003)(conspiracy among crew members of a vessel interdicted on

the high seas); *United States v. Cardales*, 168 F.3d 548 (1st Cir. 1999)(aiding and

abetting aboard the vessel in international waters); *United States v. Aikins*, 946

F.2d 608 (9th Cir. 1990)(crew on a boat interdicted on the high seas); *United States*

*v. Mena*, 863 F.2d 1522 (11th Cir.), *cert. denied* 493 U.S. 834 (1989)(crew

members convicted of conspiracy).    As noted, the District Court only found one

case, *United States v. Salcedo-Ibarra*, that addressed the question of the

25

constitutionality of the MDLEA when applied to an individual who was not on board a vessel on the high seas but rather conspired with such individuals and the reasoning of that decision is not persuasive. *See* Section I.A, *supra*.

## II. THERE WAS NO JURISDICTION OVER THESE DEFENDANTS OR, IN THE ALTERNATIVE, NO FACTUAL BASIS FOR THE DEFENDANTS' PLEAS BECAUSE , EVEN IF THE STATUTE IS CONSTITUTIONAL, ITS EXTRATERRITORIAL APPLICATION DOES NOT STRETCH THIS FAR

The Court was without jurisdiction over these defendants or, in the alternative, there was no factual basis for the pleas in this case because the MDLEA does not extend to the conduct to which the defendants admitted. Although the MDLEA explicitly applies extraterritorially, the District Court noted "that DOJ has not demonstrated any clear authority under international law for the proposition that a country may exercise jurisdiction over conspirators whose conduct took place wholly in a foreign country, with no demonstrated nexus to the country exercising jurisdiction, on the theory that the conspiracy involved use of a stateless vessel that traveled on the high seas." Opinion, p. 31(App., 51). The Court refused to determine the question because, in the court's mind, the statute is not ambiguous. However, the statute's extraterritoriality does not extend to these defendants.

As the legislative history of its predecessor demonstrates, the exercise of jurisdiction under the statute is "only to the 'maximum . . . permitted under

26

international law.'"  *United States v. Marino-Garcia*, 679 F.2d 1373 (11th Cir. 1982)(quoting S. Rep. No. 855, 96th Cong., 2d Sess. 2 (1980), U.S. Code Cong. & Admin. New 1980, p. 2785).  Extending this statute to cover these defendants violates international law because international law does not provide for the exercise of jurisdiction over a foreign national involved in an alleged conspiracy whose activities take place within a foreign country and whose conspiracy has no nexus with the United States.

The extraterritoriality provision of the MDLEA states that "subsection (a) applies even though the act is committed outside the territorial jurisdiction of the United States."  46 U.S.C. § 70503(b).  Subsection (a)  makes it illegal to possess with intent to distribute, "a controlled substance *on board* (a) a vessel . . . subject to the jurisdiction of the United States."  46 U.S.C. § 70503(a)(1).  A vessel subject to the jurisdiction of the United States includes a vessel without nationality. Extraterritoriality of the crime is obvious, even without the explicit provision, since a vessel without nationality is, by definition under UNCLOS, on the high seas and therefore outside the territorial jurisdiction of every country. The conspiracy provision of the MDLEA is contained in the penalty provisions, 46 U.S.C. § 70506.  The provision states that attempts and conspiracies to violate § 70503 will be penalized the same as for § 70503 violations.

27

"Generally, the extraterritorial reach of an ancillary offense like . . .

conspiracy is coterminous with that of the underlying criminal statute." *Ali*, 718

F.3d at 939 (D.C. Cir. 2013); *see also United States v. Yakou*, 428 F.3d 241, 252

(D.C. Cir. 2005).  The conspiracy provisions do not explicitly extend the

extraterritoriality of § 70503.  As the Supreme Court noted in *Kiobel v. Royal*

*Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), "[w]hen a statute provides for some

extraterritorial application, the presumption against extraterritoriality operates to

limit that provision to its terms."  The MDLEA's substantive offense requires that

the illegally conduct occur "on board" a vessel subject to the jurisdiction of the

United States.  The extraterritoriality clause is restricted by that limitation which

means that the crime must be on board a vessel and in international waters.  Since

the conspiracy provision does nothing to expand the extraterritoriality of the

statute, it must therefore be limited to conspiracies "on board" a vessel in

international waters.  This case is similar to *Yakou*.  In *Yakou*, this Court examined

whether the aiding and abetting statute could expand the reach of the Arms Export

Control Act.  Although the Act applied to "any person," the State Department

promulgated regulations that required only U. S. persons be licensed and

registered.  This Court held that to expand liability to include "non-U.S. persons

located and acting outside the United States" because they allegedly aided and

abetted a person in the United States would "greatly expand the scope of the

registration and licensing requirements" beyond what Congress and the regulations contemplated. *Yakou*, 428 F.3d at 253. Similarly, expanding the conspiracy clause of the MDLEA to include individuals whose activities occurred solely in a foreign country would expand the application of the MDLEA into an area for which Congress has not expressed the requisite clarity. Certainly, there is no reading of the extraterritoriality language that extends to acts committed entirely within a foreign country by foreign nationals when there is no nexus to the United States. Since these defendants did not conspire "on board" a vessel, their conduct was outside the jurisdiction of this statute.

*Ali* dealt with a statute similar to, yet meaningfully different from, the MDLEA. In *Ali*, this Court reviewed the extraterritoriality of the federal piracy statute, 18 U.S.C. § 1651 that applies to "[w]hoever, on the high seas, commits the crime of piracy as defined by the law of nations." *Ali,* 718 F.3d at 935. Based on the statutory language, Ali, who was charged as an aider and abettor and a conspirator under 18 U.S.C. §2, argued that the government was seeking to use the aider and abettor statute to expand the extraterritorial scope of § 1651 beyond the high seas. The court rejected that argument noting "a crucial fact;" that was, that the statute's high seas element was not the only evidence of the statute's extraterritorial reach because it also referenced the "law of nations." *Ali*, 718 F.3d at 941. The reference to the law of nations is important because the law of nations

29

included "facilitating" within the scope of "piracy*.*" *Id.*; *see also*, *United States v. Shibin*, 722 F.3d 233, 240 (4th Cir. 2013). Thus, the *Ali* court found that Ali could be charged as an aider and abettor. However, because conspiracy to commit piracy did not fall within "facilitating" and was not otherwise a violation of international law, the conspiracy charge failed. *Id.* at 937-38. No expansive language exists in the MDLEA similar to the inclusion of facilitating in the law of piracy. The only extraterritorial reference is to being "on board a vessel." *Id.* Furthermore, the Eleventh Circuit observed that

> Congress did not intend for the conspiracy portion of the MDLEA to apply to wholly extraterritorial conspiracies, *see United States v. MacAllister*, 160 F.3d 1304, 1307 (11th Cir.1998) ("The general rule is that a conspiracy to violate the criminal laws of the United States, in which one conspirator commits an overt act in furtherance of that conspiracy within the United States, is subject to prosecution in the district courts."); international comity concerns require that the conspiracy portion of the MDLEA not apply to wholly extraterritorial conspiracies, *see Hartford Fire*, 509 U.S. at 798, 113 S. Ct. 2891 (majority opinion) (deciding "whether a court with Sherman Act jurisdiction should ever decline to exercise such jurisdiction on grounds of international comity").

*De La Garza*, 516 F.3d at 1273 n.4. *But see, Salcedo-Ibarra,* 2009 WL 1953399, at *1 (statute covers individuals who conspire with those "on board a vessel" even if the conspirator never boards the vessel.).

Even where a statute expressly provides for extraterritorial application, the court will not interpret the statute to conflict with the domestic law of another

country unless Congressional intent to do so is clear. *See* Opinion, p. 29 (App., 49); *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch 64) (1804). If a statute's extraterritorial application would violate international law, at the second step of the *Charming Betsy* analysis, courts ask whether Congress intended such a violation. If Congress's intent is evident, that is the end of the inquiry. Courts are "'obligated to give effect to an unambiguous exercise by Congress of its jurisdiction to prescribe even if such an exercise would exceed the limitations imposed by international law.'" *United States v. Yunis,* 924 F.2d 1086, 1091 (D.C. Cir. 1991)(quoting *Fed. Trade Comm'n v. Compagnie de Saint-Gobain-Pont-a-Mousson,* 636 F.2d 1300, 1323 (D.C. Cir. 1980)). However, if the statute in question is ambiguous, *Charming Betsy* instructs courts to interpret it in light of international law. Thus, "'[s]ince the days of Chief Justice Marshall, the Supreme Court has consistently held that congressional statutes must be construed wherever possible in a manner that will not require the United States to violate the law of nations.'" *George E. Warren Corp. v. EPA,* 159 F.3d 616, 624 (D.C. Cir. 1998) (quoting *South African Airways v. Dole,* 817 F.2d 119, 125 (D.C. Cir. 1987) (some internal quotation marks omitted).

In the case of a conspiracy to violate the MDLEA, no such Congressional intent can be found in the statute. The crime for which Congress provides explicit extraterritoriality relates to controlled substances "on board" a vessel on the high

31

seas.  If the defendant does not possess the controlled substances on board a vessel, there is no jurisdiction.  The conspiracy provision merely provides for a penalty for someone who conspires to violate the MDLEA.  It does not explicitly provide for extraterritoriality of such a conspiracy except for the extraterritoriality of persons on board a vessel subject to the jurisdiction of the United States.

If the statute does not clearly limit a conspiracy to activities "on board" a ship, it then must be found to be ambiguous contrary to the District Court's interpretation for it is not clear whether the conspiracy is limited to on board activities or not.  The charge to which these Defendants pled demonstrates the ambiguity of the statute.  The government charged that these defendants participated in a "conspiracy to distribute 500 grams or more of . . . cocaine, a Schedule II controlled substance, on board a vessel subject to the jurisdiction of the United States."  Superseding Information (Docket No. 71) (App., 91).  Grammatically, the phrase "on board a vessel" either modifies conspiracy or distribute; that is, the defendants either conspired on board a vessel to distribute cocaine or they conspired to distribute cocaine on board the vessel.

Interpreting the statute as requiring the conduct to be on board a vessel subject to the jurisdiction on the United States prevents the statute from conflicting with international law because it does not assert jurisdiction over activities and persons whose actions are entirely within the domestic jurisdiction of another

32

country and that have no nexus to the United States. The government's

interpretation that a conspirator can be anywhere, at any time, with no nexus to the

United States would result in violations of international law. For instance, two

people sitting in a coffee shop in Colombia who agree to buy some cocaine and

ship it by stateless vessel to Mexico would be violating United States law.

The District Court claimed support for the conclusion that the statute reaches

domestic conduct in another country. The first case cited by the District Court,

*Salcedo-Ibarra*, is of no value as noted above. *See* Section I.A, *supra*. The District

Court also cited *United States v. Medjuck*, 937 F. Supp. 1368, 1369-70, 1375 (N.D.

Cal. 1996). In *Medjuck*, the defendant was charged with a several year conspiracy

to import hashish from Pakistan to North America by boat. The District court

found that there was "sufficient evidence of nexus [to the United States], including

both evidence that the conspiracy was conducted in part in the United States, and

evidence 'from which a reasonable jury could conclude that the hashish was

intended for distribution in the United States.'" *Id.* at 1369.[8] The District Court

_____

[8]  The Court of Appeals, in reviewing the conviction of others involved in the conspiracy, noted that "Americans controlled the movements of the Lucky Star [the boat used to smuggle the hashish], the conspiracy was coordinated and controlled in the United States, the Lucky Star had backup landing sites in the United States, and that the conspirators' plan called for ultimate distribution in the United States." *Medjuck*, 937 F. Supp. at 1379 (citing *United States v. Khan*, 35 F.3d 426, 429(9th Cir. 1994)). The Medjuck court identifies several foreign based co-conspirators who apparently were not charged:  "Haji Ibrahim was the Pakistani hashish supplier . . .; Ferdous, also from Pakistan, assisted and translated for Haji.  Razak . . . was an associate of Haji and Ferdous.  Michael Fernando, and his partner, Captain Malapit . . . were hired to procure

cited the fact that one defendant "was 'an American living in Singapore [who] was responsible for shore-based communications with the transport vessel,' and the other was 'a Canadian[] who . . . purchased the hashish' and was 'responsible for bringing it to shore and transporting it inland when it reached North America.'" Opinion, p. 36 (App., 56). However, the District Court failed to acknowledge that the *Medjuck* court found that both defendant Medjuck and Sotirkys had sufficient nexus to the United States to support a prosecution. Medjuck had direct, and "extensive" indirect contact with the United States[9] while "plenty of evidence demonstrates a sufficient connection between Sotirkys' conduct in the conspiracy and the United States" without attributing to him any of the actions of his co-conspirators. *Id*. 1390.[10] In fact, the *Medjuck* decision is directed at the question of the adequacy of the nexus evidence and does not address the issue before this Court – the scope of the conspiracy clause when applied to foreign domestic

---

and outfit a ship to be used to transport the hashish. The hashish was purchased by Norbert Stok and Leo Hartong, both Dutch." *Medjuck*, 937 F. Supp. at 1382.

[9]  Medjuck had both direct and indirect nexus to the United States including sending two associates to the U.S. to hire a boat and crew for offloading; he made arrangements to pay the crew in U.S. dollars including sending a courier to meet his associate in Seattle with money; Medjuck was involved in a telephone conversation with the associate while Medjuck was in the U.S.; speaking with a possible purchaser who was located in the United States and speaking with a co-conspirator about the conspiracy while Medjuck was in the United States. *Medjusck*, 937 F. Supp. at 1388-89.

[10]  According to the Medjuck court, those connections included three meetings regarding the drug shipments in the San Francisco area; Seventeen conversations with a potential buyer of the drugs while both were in the Bay Area; the passage of messages from the Bay Area to others relating to the operation of the conspiracy. *Medjusck*, 937 F. Supp. at 1390.

34

activities without a nexus to the United States.  There is no claim of nexus in this case.

### A. The Prosecution Violated These Defendants' Due Process Rights

Principles of international law are "useful as a rough guide" in determining whether application of a statute would violate due process.  *See United States v. Davis*, 905 F.2d 245, 249 n.2 (9th Cir. 1990), *cert. denied*, 498 U.S. 1047 (1991).

Due process requires, at a minimum, notice to a foreign offender that his conduct is subject to criminal prosecution and that such prosecution can be brought against him by the United States, specifically or, generally, any appropriate country other than his own. *See Ali*, 718 F.3d at 944 (D.C. Cir. 2013).  Notice has been found where there is "a sufficient nexus between the defendant and the United States, so that [the] application [of the statute] would not be arbitrary or fundamentally unfair." *United States v. Mohammad-Omar,* 323 F. App'x. 259, 261 (4th Cir.2009) (quoting *United States v. Yousef,* 327 F.3d 56, 111 (2d Cir.2003); *Davis,* 905 F.2d 245, 248-49 (9th Cir.1990)). The nexus requirement "serves the same purpose as the minimum contacts test in personal jurisdiction," namely ensuring that "a United States court will assert jurisdiction only over a defendant who should reasonably anticipate being haled into court in this country." *Id.* Generally, then, the government has been required to show that the defendant was an American, the drugs were destined for the United States or significant acts in

furtherance of the conspiracy occurred in the United States.  *See, e.g.*, *Mohammad-Omar*, 323 F. App'x. at 261 (conspiracy to export drugs to the U.S.); *Medjuck*, 937 F. Supp. at 1369-70, 1375.

Adequate notice has been found without a nexus only where the conduct is universally condemned and there is no obvious prosecutorial authority; for instance, when narcotics for distribution are aboard a stateless vessel on the high seas, outside the jurisdiction of any country, or where there was global notice that the criminal act was subject to prosecution by any party to an international treaty. *See, e.g.*, *Ali*, 718 F.2d at 945.  In *Ali*, notice to foreign offenders that they could be prosecuted for piracy in the United States was based on a United Nations convention, which expressly provided that offenders could be prosecuted by any state signatory.  *Ali*, 718 F.3d at 945.  Additionally, piracy violates the law of nations.  No such international convention exists for an alleged conspiracy to ship illicit drugs on the high seas.  There is no universal condemnation of the conduct allegedly committed by these defendants.  *See id.*; *see also United States v. Shi*, 525 F.3d 709 (9th Cir. 2008).

The fact that the conspiracy allegedly used stateless vessels is not sufficient to provide due process notice.[11]  Vessels without nationality are, by definition, on

---

[11] There is no such thing as a "stateless" vessel, the term used in Mr. Munoz's plea.  Rather, the statute speaks of a "vessel without nationality."

36

the high seas.  UNCLOS only applies in such cases.  Additionally, the examples of a vessel without nationality contained in the MDLEA are related to actions taken by the master on board the vessel.  Such vessels without nationality are not pirates or otherwise deemed to be outlaws.  Rather, such a vessel without nationality forfeits the right of free passage on the high seas granted flagged vessels and is subject to the jurisdiction of the United States "at least for the limited purpose of determining her true identity" while on the high seas.  *See United States v. Rubies*, 612 F.2d 397, 404 (9th Cir. 1979);[12] *see also* UNCLOS, Art. 110; *United States v. Luchi*, 627 F.3d 1, 5 (1st Cir. 2010).[13]  Because a vessel without nationality does "not fall within the veil of another sovereign's territorial protection, all nations can treat them as their own territory and subject them to their laws."  *Caicedo,* 47 F.3d at 373; *see also, Molvan v. Attorney General for Palestine*, (1948) 81 LI L Rep. 277, UKPC.  That axiom has been extended to individuals present on such a ship.  *See United States v. Alvarez-Mena*, 765 F.2d 1259, 1264 (5th Cir. 1985).  Neither UNCLOS nor international law however extends that lack of protection to

---

[12] *Rubies* was relied upon in *United States v. Caicedo*, 47 F.3d 370 (9th Cir. 1995) for the proposition that "[w]e have recognized the substantial protections forfeited by stateless vessels on the high seas." *Id.* at 372.  *Caicedo*, in turn, was relied upon by the District Court in finding that the instant prosecution conformed with due process.

[13]  The right to visit provision, Article 110, allows a warship "which encounters on the high seas a foreign ship" to board that ship if there is "reasonable ground for suspecting" that it is a vessel without nationality.  Art. 110(1)(d).

individuals who may sponsor such a vessel or conspire with the vessel's crew
while in the domestic jurisdiction of a country.  Rather, the UNCLOS respects the
domestic sovereignty over a country's territorial sea as well as registered boats,
and their passengers and crew.  *See*  UNCLOS, Part II, Section 1.

    While courts have found that prosecution of individuals on stateless vessels
does not violate due process those cases involved stateless vessels apprehended on
the high seas where the vessels were without legal protection of any sovereign.
*See, e.g.*, *United States v. Marino-Garcia*, 679 F.2d 1373, 1385 n.19 (11th Cir.
1982) ("The defendants should therefore have been on notice that the United States
or any other nation concerned with drug trafficking has commenced subjecting
stateless vessels to its jurisdiction.").  The courts have focused on the stateless
status of the vessel because there may be no sovereign other than the United States
that has an interest in prosecuting the crew of the vessel.  Thus, the Third Circuit
relied on that fact, in part, in finding a prosecution satisfied due process.  *United
States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056-57 (3d Cir. 1993).  In contrast, "a
defendant would have a legitimate expectation that because he has subjected
himself to the laws of one nation, other nations will not be entitled to exercise
jurisdiction without some nexus."  *Caicedo*, 47 F.3d at 372; *see also United States
v. Greer*, 965 F. Supp. 531, 535-36 (D. Ver. 1997)(requiring a nexus in a case
involving United States citizens, a foreign vessel and Canadian territorial waters).

There are no cases that extend such notice to individuals within a foreign country who allegedly conspire with individuals on board a vessel without nationality.  A violation of due process has been found for similar conduct where there was an obvious prosecutorial authority such as when the vessel on the high seas was registered in a particular country.  As the Ninth Circuit observed: "Punishing crimes committed on a foreign flag ship is like punishing a crime committed on foreign soil; it is an intrusion into the sovereign territory of another nation.  As a matter of comity and fairness, such an intrusion should not be undertaken absent proof that there is a connection between the criminal conduct and the United States sufficient to justify the United States' pursuit of its interests." *Caicedo*, 47 F.3d at 372.   While *Martinez-Hidalgo*, 993 F.2d at 1056, 1056 n.6, cited by the District Court, stated its rejection of a nexus requirement, it did so in a case involving the crew of a vessel without nationality.  *Id*. at 1055 ("Clearly the 26-foot boat was a 'vessel without nationality' because Colombia disclaimed" the crews claim of registry).  The *Martinez-Hidalgo* court's opinion speaks in terms of vessels on the high seas.  Only in a footnote, does the court indicate that it differed with the Ninth Circuit's holding that a nexus requirement exists when a flagged vessel is involved.  The *Martinez-Hidalgo* court does not explain the basis of this aside which is dictum at best.  Furthermore, the *Martinez-Hidalgo* concluded that it was not "fundamentally unfair" "to provide for the punishment of persons

39

apprehended with narcotics on the high seas" because trafficking in narcotics is "condemned universally by law-abiding nations." As noted above, narcotics trafficking does not violate international law. *See* Section I.A., *supra*. In any event, *Martinez-Hidalgo* does not speak to the fairness of prosecuting these defendants.

Other courts have rejected the nexus requirement for foreign flagged vessels based on the consent of the flag country to the boarding of the vessel and the prosecution of the crew. *See, e.g., United States v. Suerte*, 291 F.3d 366 (5th Cir. 2002)(and cases discussed therein). The MDLEA defines vessel subject to the jurisdiction of the United States as one where the flag nation has consented to enforcement of United States law. As the *Suerte* court noted, "[a] flag nation's consent to a seizure on the high seas constitutes a waiver of that nation's rights under international law." *Id*. at 375. However, since neither Mr. Valderrama nor Mr. Munoz were on board a vessel, their native country, Colombia, could not consent to the application of United States law as provided under the MDLEA.

Certainly, there are no cases involving vessels that never enter onto the high seas as stipulated to by Mr. Munoz Miranda.[14]

---

[14] *Marino-Garcia* was relied upon by *Caicedo*, another case involving apprehension on the high seas, which, in turn, was relied upon by the District Court. *See* Opinion, p. 69 (App, 89).

40

### B. The District Court Did Not Have Subject Matter Jurisdiction Because Mr. Munoz and Mr. Valderrama Were Not Associated With a Vessel Subject to the Jurisdiction of the United States

The "on board a vessel subject to the jurisdiction of the United States" portion of the MDLEA is a congressionally imposed limit on the courts' subject matter jurisdiction. *De La Garza*, 516 F.3d at 1272.

> [F]or a district court to have adjudicatory authority over a charge that a defendant 'knowingly or intentionally . . . possess[ed] with intent to manufacture or distribute a controlled substance" in violation of 46 U.S.C. App'x § 1903(a) [46 U.S.C. § 70503(a)], the Government must preliminarily show that the defendant was "on board a vessel subject to the jurisdiction of the United States." Furthermore, for a district court to have adjudicatory authority over a charge that a defendant conspired to violate the substantive crime defined in subsection (a), the Government must preliminarily show that the conspiracy's vessel was, when apprehended, "subject to the jurisdiction of the United States." *Id.*; 46 U.S.C. App'x § 1903(j)(2005).

*Id.*; *see also* 46 USC § 70502(c).

Mr. Munoz

The District Court relied on two statements in finding that Mr. Munoz was associated with a vessel subject to the jurisdiction of the United States:  (1) the general description of the conspiracy which asserted that it used "stateless vessels" to ship cocaine from Colombia to Mexico,  Opinion, p. 21 (App., 41); and (2) Mr. Munoz's concession "that the stolen load was to be shipped aboard a boat that 'was not registered in Colombia and did not fly a Colombia flag."  Opinion, p. 22 (App.,

41

42).  Based on that "concession" the Court found that the boat was stateless and

thus subject to the jurisdiction of the United States.  In making that determination,

the District Court did not apply the criteria set out in the statute nor did it consider

that the boat never left the dock in Colombia.

Under the MDLEA, "a vessel without nationality" is generally defined to

"include[]" the following:

> (A) a vessel aboard which the master or individual in charge makes a
> claim of registry that is denied by the nation whose registry is
> claimed;
>
> (B) a vessel aboard which the master or individual in charge fails, on
> request of an officer of the United States authorized to enforce
> applicable provisions of United States law, to make a claim of
> nationality or registry for that vessel; and
>
> (C) a vessel aboard which the master or individual in charge makes a
> claim of registry for which the claimed nation of registry does not
> affirmatively and unequivocally assert that the vessel is of its
> nationality.

46 U.S.C. § 70502(d)(1).  While this list is not exhaustive, it is informative.  *See*

*United States v. Matos-Luchi*, 627 F.3d 1, 4 (4th Cir. 2010).  Each exemplar begins

with a confrontation with the master of the vessel while on board.  As such, the

statute implies that the determination of a vessels status occurs once the vessel is at

sea which is consistent with UNCLOS which limits the right to board such a vessel

to vessels on the high seas.

The statute further states that a claim of nationality or registry requires only (1) possession on board the vessel and production of documents; (2) flying a national flag; or (3) a verbal claim by the master or individual in charge.  46 U.S.C. § 70502(e).

Clearly, Mr. Munoz's stipulation does not satisfy the statutory examples. There was no stipulation that the master of the vessel, or the vessel itself, did not claim nationality or registry.  The stipulation only concluded that the vessel did not sail under the authority of the Republic of Colombia.  Additionally, since the vessel ws never on the high seas, it never became a vessel without nationality under international law.

Mr. Valderrama

As to Mr. Valderrama in regards to the seized vessel off the coast of Roncador Island, Colombia, on or about November 16, 2006, the crew and the captain were never asked to assert nationality.  Opinion, p. 6, 7, 22 (App., 26, 27, 42).  The Colombian navy stopped the vessel and there is no indication that the Colombian navy asked the Colombian crew about the nationality of the vessel. Thus, this case is different from those cited by the Court where members of the crew failed to identify the nationality of the vessel.  *See, e.g.*, *United States v. Rendon,* 354 F.3d 1320 (11th Cir. 2003); *United States v. Cuevas-Esquivel*, 905 F.2d 510 (1st Cir. 1990), Opinion pp. 22-23 (App., 42-43).

43

Furthermore, contrary to the District Court's decision, the vessel only becomes "without nationality" while in international waters. A vessel does not become an outlaw ship because it has passed through international waters. Once the vessel returned to Colombian waters, it became subject to the laws of Colombia and any jurisdiction by the United States based on its "stateless" status was lost because it was not longer a vessel without nationality. If the law were otherwise, the Eleventh Circuit's *Bellazaic-Hurtado* decision would be wrong; a "stateless vessel" in the domestic waters of another country would be subject to the jurisdiction of the United States. International law does not so provide, as noted above.

## CONCLUSION

For the foregoing reasons, Mr. Munoz and Mr. Valderrama respectfully request that the judgment of the District Court be vacated and the charges against them be dismissed.

44

Dated:  February 24, 2014              Respectfully submitted,

By:/s/Douglas J. Behr
      Douglas J. Behr (Bar No. 163998)
      Keller and Heckman LLP
      1001 G Street, N.W.,
      Suite 500 West
      Washington, D.C. 20001
      Tel: (202) 434-4100
      Fax: (202) 434-4646

      *Counsel for Luis Alberto Munoz*
      *Miranda (Appointed by the Court)*

      Elita C. Amato (Bar No. 442797)
      Law Office of Elita C. Amato
      1600 Wilson Blvd., Suite 205
      Arlington, VA 22209
      Tel:  (703) 522-5900
      Fax: (703) 875-8957

      *Counsel for Francisco Jose*
      *Valderrama Carvajal*
      *(Appointed by the Court)*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Brief for Appellant Alberto Munoz Miranda and Francisco Jose Valderrama Carvajal complies with the type-value limitation of Fed. R. App. P. 32(a)(7)(B) and District of Columbia Circuit Rule 32(a) because this brief contains 11,165 words, excluding those parts of the brief exempted by the rules.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type and style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in 14 point Times New Roman font.

By:   /s/Douglas J. Behr
Douglas J. Behr (Bar No. 163998)
(Behr@khlaw.com)
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Tel:  (202) 434-4100
Fax: (202) 434-4646

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of February, 2014, two copies of the foregoing Opening Brief of Appellants Luis Alberto Munoz Miranda and Francisco Jose Valderrama Carvajal was served upon the following counsel by first class mail, postage prepaid:

David Lieberman, Esquire
(David.Lieberman@usdoj.gov)
U.S. Department of Justice
Criminal Division, Appellate
950 Pennsylvania Ave., N.W.
Suite 1264
Washington, D.C. 20530

Elizabeth Trosman, Esquire
(Elizabeth.Trosman@usdoj.gov)
Assistant U.S. Attorney
U.S. Attorney's Office
Appellate Division
555 4th Street, N.W.
Washington, D.C. 20530

John-Alex Romano, Esquire
(John-Alex.Romano@usdoj.gov)
Trial Attorney
U.S. Department of Justice
Criminal Division, Appellate
P.O. Box 899 Ben Franklin Station
Washington, D.C. 20044-0899

Brendan Tracz, Esquire
(Brendan.Tracz@usdoj.gov)
USAO Appellate Counsel
U.S. Attorney's Office
Appellate Division
555 4th Street, N.W.
Washington, D.C. 20530

By:   /s/Douglas J. Behr_____
      Douglas J. Behr (Bar No. 163998)
      (Behr@khlaw.com)
      Keller and Heckman LLP
      1001 G Street, N.W., Suite 500 West
      Washington, D.C. 20001
      Tel:  (202) 434-4100
      Fax: (202) 434-4646